## AFFIDAVIT OF SPECIAL AGENT CHRISTOPHER DIORIO

I, Special Agent Christopher Diorio, deposes and states as follows:

1. I am a Special Agent with the United States Immigration and Customs Enforcement (ICE). I have been so employed with Customs for over two years as a special agent. I have been assigned to the narcotics smuggling unit of the Boston office of U.S. ICE since December of 2002 and since then I have been involved in dozens of drug related investigations involving the illegal smuggling of cocaine, heroin, ecstasy, marijuana and steroids. I have also received training from U.S. Customs at the Federal Law Enforcement Training Center in all aspects of drug smuggling, including the structure, organization, and operation of international drug smuggling groups, the techniques used by such persons to finance and import drugs, and the identification of documents and other records commonly generated by such operations.

2. I submit this affidavit in support of a criminal complaint charging **CAESAR MERCEDES (MERCEDES), FRANCISCO NAVARRO (NAVARRO), and NOEL HERNANDEZ (HERNANDEZ)** with conspiracy to illegally import into the Customs' territory of the United States from a place outside thereof, a quantity of heroin, a class I controlled substance, in violation of 21 U.S.C. §963.

3. The information contained in this affidavit is based upon facts and circumstances that I am personally familiar with,

2

and as related to me by other law enforcement officers familiar with the facts of this investigation. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that **CAESAR MERCEDES (MERCEDES), FRANCISCO NAVARRO (NAVARRO),** and **NOEL HERNANDEZ** have committed the crime set forth in the accompanying Criminal Complaint.

**Facts**

4. On Tuesday night, July 13, 2004, American Airlines Flight No. 2084 arrived from Santo Domingo, Dominican Republic at Logan International Airport in Boston at approximately 10:00 P.M. MERCEDES and NAVARRO, traveling under Domincan passports, were passengers on that flight and exited the plane <u>together</u> along with the other passengers at Terminal E.

5. During the Customs and Border Protection (CBP) examination process carried out routinely by CBP Inspectors of the Flight No. 2084's passengers, MERCEDES and NAVARRO were selected by CBP Inspectors for examination and questioned briefly by two different CBP Inspectors.[1] During their interviews

---

[1] MERCEDES and NAVARRO had been previously identified by CBP Passenger Analysis Unit from the AA Flight 2084 manifest because their airline tickets to Boston had been purchased by a third party from a travel agency in Lynn, MA using cash <u>the same day</u> as MERCEDES' and NAVARRO's initial departure from Puerto Rico. After spending 3 days in Santo Domingo, MERCEDES and NAVARRO then departed the D.R. on route to Boston on July 13, 2004. Likewise,

3

(conducted separately), Inspectors asked MERCEDES and NAVARRO a series of questions. When asked if they had been traveling with anyone else, both MERCEDES and NAVARRO replied that they were traveling <u>alone</u> and that they did not know each other. Also, when asked the purpose of their visit to the states, MERCEDES replied that he was here to do "tile" work for $75 a day; NAVARRO replied that he had come to see a friend in Massachusetts for a couple of days and then intended to travel to New York City.

6. After some additional questions, both MERCEDES and NAVARRO were asked (separately) if either man had swallowed illegal drugs before entering the United States that night. MERCEDES admitted to CBP Inspectors that he, in fact, had swallowed 40 pellets of "cocaine." NAVARRO was asked the same question and replied that he, too, was in possession of drugs but that they were hidden in his groin area. However, after being warned by Inspectors that his health might be in jeopardy if he had drugs internally, he then admitted to also swallowing pellets containing drugs. A search of NAVARRO's groin area revealed 11 egg shaped pellets containing a white powder, one of which was then field-tested by Inspectors for the presence of drugs. This test proved positive for heroin.

---

neither MERCEDES or NAVARRO had return tickets to either Santo Domingo or Puerto Rico. Such unusual travel arrangements is consistent, based on my experience, with possible drug smuggling activity.

4

7. Based on the above information and the discovery of heroin on NAVARRO's person, both MERCEDES and NAVARRO were quickly taken to Whidden Memorial Hospital in Everett, MA so that they could naturally "pass" whatever pellets containing illegal drugs both men admitted to consuming earlier. Over the next several hours, both MERCEDES and NAVARRO passed multiple egg-shaped pellets containing a white powder. Assorted chemical field tests were performed on certain of these pellets and also tested positive for heroin.

**Driver: NOEL HERNANDEZ**

8. Prior to MERCEDES and NAVARRO departing for the Whidden Hospital and their need to "pass" heroin pellets, I asked NAVARRO who was planning to pick him up at Logan Airport following his arrival that night. NAVARRO said that he was to be picked up by "Noel HERNANDEZ" and gave me a physical description of this individual – an Hispanic male, approximately 5" 1" tall, with a dark complection. NAVARRO also supplied me with a cellular telephone number with which to contact Noel HERNANDEZ directly; 857-472-3142.[2]

9. Armed with this information, I proceeded to the Terminal E floor in the hope of locating HERNANDEZ. On arriving at the Terminal E floor, I called the cellular number Navarro had

---

[2] This number is the contact telephone number that appeared with the reservation information for the MERCEDES and NAVARRO airline tickets.

just given to me and heard the phone ring several times.  A male voice answered the phone and said "hello" in an Hispanic accent.  I then asked if I was speaking with "Noel?"  The male voice replied, "yes."  I then asked "Noel" several questions including whether he was at the airport.  "Noel" said that he was at the airport but at "Terminal B."  (Terminal B is the AA terminal for domestic flights; Terminal E is for all International arrivals, including AA flights).  When "Noel" asked who I was, I replied that I was "with his friend."  After clearing up the confusion about which Terminal I was at, "Noel" told me not to go anywhere and that he would be right there.  I then walked outside to the curb at Terminal E and waited almost 5 minutes.  At that point, I observed an Hispanic male fitting the physical description previously given to me by NAVARRO, drive slowly by me in a white station wagon looking around as if trying to find someone.  At that moment, I called the same cellular number over which I had just spoken with "Noel" (857 472-3142) and observed the same Hispanic male driving the white station wagon put the phone to his ear, answer his phone and begin to speak to me.

10.   After talking with "Noel" over his telephone a few more moments, myself and other agents approached "Noel's" vehicle and spoke with him further.  Noel was asked for identification and he produced both a MA Driver's License and a Permanent Legal Resident Alien card <u>both</u> in the name NOEL HERNANDEZ.  HERNANDEZ

was asked what he was doing at the airport. HERNANDEZ replied that he was there to pick up an adult (a person he identified as "Luis") and two children. HERNANDEZ also said that he did not know who these people were, but that he expected to be contacted by telephone about where to pick them up. HERNANDEZ also said that his instructions were to take these three passengers to Maverick Square in East Boston and drop them off in the square. HERNANDEZ also said they would then be picked up by a man named "Medina."

11. During this interview of HERNANDEZ, he agreed to permit me to inspect the contents of his wallet. During my inspection of the wallet, I discovered a small amount of white powder wrapped up/concealed in a dollar bill. The powder appeared to me to be a controlled substance and, later, was determined to be cocaine.

12. Following discovery of the drugs, HERNANDEZ was arrested by State Troopers and his person was searched incident to his arrest. During this search, a white business size envelope from "Union Travel" in Lynn, MA was discovered in one of HERNANDEZ' pockets. The envelope contained the American Airlines travel itinerary for both **CAESAR MERCEDES and FRANCISCO NAVARRO** on AA Flight No. 2084, as well as a cash invoice (dated July 10, 2004) from Union Travel confirming payment of MERCEDES and NAVARRO's one-way airline tickets departing Puerto Rico on July

7

10, 2004, stopping in the Domincan Republic, and ending up in Boston, MA on July 13, 2004.

13.   Also in the course of our exchange with HERNANDEZ, he told agents that he was a former Delta Airlines employee working here in Boston.  He then produced a color photograph of himself and another employee standing on the Logan Airport tarmac in front of a Delta Airlines jet and handed same to agents.  This photograph was later placed in front NAVARRO who voluntarily pointed to HERNANDEZ and stated "that's Noel."

14.   Based on the information contained in this Affidavit, all of which are true and accurate to the best of my knowledge, information and belief, I believe that there is probable cause to believe that **CAESAR MERCEDES (MERCEDES), FRANCISCO NAVARRO (NAVARRO),** and **NOEL HERNANDEZ** have committed a violation of 21

8

U.S.C. §963, conspiracy to illegally import heroin, a class I controlled substance, into the United States from a place outside thereof, namely the Dominican Republic.

CHRISTOPHER DIORIO
Special Agent
U. S. ICE

Sworn to and subscribed before me this 14 day of July 2004.

MARIANNE B. BOWLER
United States Chief Magistrate Judge